IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BARBARA J. UEBELACKER,

        Plaintiff,

v.                                           Case No. 3:21-cv-177-jdp

ROCK ENERGY COOPERATIVE
and SHANE LARSON as agent and in his
individual capacity,

        Defendants.

---

PLAINTIFF'S Second SUPPLEMENTAL RESPONSE TO
DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS

---

To:    Defendants Rock Energy Cooperative
        and Shane Larson
        c/o Attorney Rhea A. Myers
        Wheeler, Van Sickle & Anderson, S.C.
        44 East Mifflin Street, Suite 1000
        Madison, Wisconsin 53703

        Pursuant to Fed. R. Civ. P. 33 and 34, the Plaintiff Barbara J. Uebelacker, by her legal counsel Lewis Law Office, LLC and Attorney Julie A. Lewis serve upon you the following Second Supplemental Response to Defendants' Interrogatories, Requests for Admission, and Requests to Produce Documents.

**INTERROGATORIES**

**Supplemental General Response**

The information provided in Plaintiff's Responses to Defendants' First Set of Discovery Requests consists of information known to the Plaintiff as of October 27, 2021, and November 16, 2021, and is subject to change as discovery is completed in this matter.

**INTERROGATORY NO. 1:** Please describe the factual basis of the allegations of paragraph 9 of the First Amended Complaint that Bud Booth "accessed Ms. Uebelacker's personal Facebook Messenger account," including:

   a) The date(s) of the alleged access;
   b) The identity of any other facts that you contend form the factual basis of this allegation;
   c) The identity of any documents reflecting the alleged access;
   d) The identity of all persons known to you who have knowledge of the alleged access and describe the knowledge that you believe each such person has; and
   e) Any other factual basis for the allegation.

**Response**: Subject to Plaintiff's receipt of Defendants' responses to Plaintiff's discovery requests, Plaintiff states that the First Amended Complaint and the information Defendants provided to the Wisconsin Equal Rights Division fully describe the facts known to the Plaintiff regarding the allegation. Former employee Angie Schuman has knowledge of the alleged access.

**Supplemental Response:** The First Amended Complaint describes the factual basis for the allegations in paragraph 9 of the Complaint as follows:

   5. Ms. Uebelacker began working for Defendant Rock Energy Cooperative as its full-time Communications Specialist on April 20, 2009. In October 2018, Rock Energy promoted Ms. Uebelacker to the position of Communications Director. In May 2020, Rock Energy demoted Ms. Uebelacker to the Communications Specialist position and on June 30, 2020, Rock Energy terminated Ms. Uebelacker's employment. She is 64 years old.

   6. Ms. Uebelacker worked full-time for Rock Energy Cooperative during her 11-year tenure. With one exception that is the subject of this complaint, Ms. Uebelacker had an outstanding work record. She did not experience any discipline and uniformly received excellent feedback on her job performance.

   7. Rock Energy Cooperative is a Wisconsin energy cooperative that distributes electricity to customers in Rock County, Wisconsin, and electricity and natural gas to customers in northern Illinois. It is headquartered at 2815 Kennedy Road, Janesville, Wisconsin, 53547 and has an office at 15229 Willowbrook Road, South Beloit, Illinois 61080. It is governed by a nine-member Board of Directors, each representing a Rock Energy service district.

   8. Rock Energy employs approximately 50 people, including Chief Executive Officer Shane Larson, Manager of Administrative Services Sharon Janes, and

ten director-level employees including, until June 30, 2020, Ms. Uebelacker.

9. On January 14, 2019, shortly after Ms. Uebelacker's promotion to Communications Director, Defendant Larson called her into his office where Ms. Janes was also present. Defendant Larson informed Ms. Uebelacker that the Cooperative's Information Technology staff person, Bud Booth, logged into the work computer of former Rock Energy employee Angie Schuman. He logged onto Ms. Schuman's personal Facebook Messenger account and then accessed Ms. Uebelacker's personal Facebook Messenger account where he "found" a private Facebook Messenger conversation between Ms. Schuman and Ms. Uebelacker. This specific conversation was copied in a series of screen shots and given to Defendant Larson.

10. The intrusion by IT staff person Mr. Booth occurred on Monday, December 17, 2018 [note date correction].

11. The private conversation Rock Energy surveilled between Ms. Uebelacker and Ms. Schuman occurred on Sunday, December 16, 2018. They were communicating from their homes, through their private Facebook Messenger accounts, using their private computers. In the conversation, both Ms. Uebelacker and Ms. Schuman were critical of Mr. Larson's employment practices. At no time did Ms. Uebelacker consent to Defendants' accessing her private Facebook Messenger account. She did not intend or expect any individual, other than Ms. Schuman, to read or access the messages they exchanged.

12. Neither Ms. Uebelacker nor Ms. Schuman authorized Defendants to access their private Facebook Messenger accounts.

13. During the January 14, 2019, meeting with Mr. Larson and Ms. Janes, Ms. Uebelacker objected to Rock Energy's unauthorized intrusion to her private Facebook Messenger account. When she explained to Mr. Larson that it was a private conversation, he instantly fired her. He instructed her to go home and come back the following day to find out if she could continue her employment.

14. On January 15, 2019, Mr. Larson met with Ms. Uebelacker again. Under a continuing threat of termination, he required her to accept Rock Energy's surveillance of her private Facebook account or lose her job. When, under duress, she agreed, Mr. Larson demoted her because of the private Messenger conversation.

15. The demotion included a pay reduction, change from salary to hourly status and a loss in the value of her employee benefits and pension. In addition, Mr. Larson instructed Ms. Uebelacker to report to Manager of Administrative Services Sharon Janes

where previously she reported to Mr. Larson.

16. Mr. Larson's notes from the January 15, 2019, meeting were filed in Ms. Uebelacker's personnel file. The notes said:

*I asked Barb if she had anything to say regarding the Facebook post found on the co-op's computer in Angie's office and our meeting yesterday. She said she did. She again apologized for saying what she did in a private conversation.*

Upon information and belief, Defendant Larson was acting within the scope of his employment at all relevant times and acted, at least in part, for the benefit of his employer.

The documents that support these allegations include Mr. Larson's notes from January 14 and 15, 2019, Mr. Booth's report to Mr. Larson dated January 14, 2019, and Mr. Salmon's email to Mr. Larson dated December 18, 2018. Copies of each document are included in Appendix A.

**Second Supplemental Response**: Audiotapes recorded by the Plaintiff on January 15, 2019, and June 26, 2020, are provided.

**INTERROGATORY NO. 2:** Please describe the factual basis of the allegations of paragraph 14 of the First Amended Complaint that "under a continuing threat of termination, he [Mr. Larson] required her [Ms. Uebelacker] to accept Rock Energy's surveillance of her private Facebook account or lose her job," including:

a) The date(s) of the alleged continued surveillance;
b) The identity of any other facts that you contend form the factual basis of this allegation;
c) The identity of any documents reflecting the alleged continued surveillance;
d) The identity of all persons known to you who have knowledge of the alleged continued surveillance and describe the knowledge that you believe each such person has; and
e) Any other factual basis for the allegation.

**Response**: Subject to Plaintiff's receipt of Defendants' responses to Plaintiff's discovery requests, Plaintiff states that the First Amended Complaint and the information Defendants provided to the Wisconsin Equal Rights Division fully describe the facts known to the Plaintiff regarding the allegation. Former employee Angie Schuman has knowledge of the alleged access.

**Supplemental Response**: Please see the Supplemental Response to Interrogatory 1.

**Second Supplemental Response**: Audiotapes recorded by the Plaintiff on January 15, 2019, and June 26, 2020, are provided.

**INTERROGATORY NO. 3:** Please describe the factual basis of the allegations of paragraph 21 of the First Amended Complaint that "IT employee Bud Booth told a co-worker that Ms. Uebelacker was 'going to retire soon anyway so it was best to get someone else in that job,'" including:

 a) The identity of the "co-worker" to whom the alleged statement was communicated to;
 b) The identity of any other facts that you contend form the factual basis of this allegation;
 c) The identity of all persons known to you who have knowledge of the alleged statement and the knowledge that you believe each such person has;
 d) Any other factual basis for the alleged statement; and
 e) Any other factual basis for any other statement made by any employee of Defendant supporting your claim for age discrimination as alleged in the First Amended Complaint.

**Objection**: More prejudicial than probative; requests information not relevant to this matter; calls for hearsay.

**Response**: Due to concerns about potential retaliation, the identity of the employee to whom Bud Booth made the statement will be provided to the court under seal.

**Supplemental Response:** The Plaintiff, Mr. Booth and the declarant know about the alleged statement. There is no other factual basis for the alleged statement beyond the information provided. There is no other known employee statement supporting the Plaintiff's age discrimination claim as alleged in the First Amended Complaint.

**INTERROGATORY NO. 4:** Please describe the factual basis of the allegations of paragraph 31 of the First Amended Complaint of "the subsequent publication of Plaintiff's private conversation on Messenger" including:

 a) The date(s) of the subsequent publication;
 b) The location(s) of the subsequent publication;
 c) The identity of any other facts that you contend form the factual basis of this allegation;
 d) The identity of all persons known to you who have knowledge of the alleged intentional access and the knowledge that you believe each such person has; and

  **e)** Any other factual basis for the allegation.

**Response**: Upon information and belief, the Defendants first published the private Messenger conversation on December 17, 2018, at Rock Energy Cooperative. The conversation was published many times subsequently, including to the Plaintiff's employee file. Upon information and belief, Defendant Shane Larson and employees Bud Booth and Mike Salmons are among those to whom the conversation was published.

**Second Supplemental Response**: Audiotapes recorded by the Plaintiff on January 15, 2019, and June 26, 2020, are provided.

  **INTERROGATORY NO. 5:** Please describe how the following statement made by Plaintiff in her conversation with Angie Schuman on December 16, 2018 was defamatory or highly offensive to the Plaintiff: "I have no respect for those two."

**Objection:** This Interrogatory does not make sense.

**Response:** None

**Supplemental Response:** Ms. Uebelacker's statement "I have no respect for those two" was not defamatory or highly offensive to Ms. Uebelacker.

  **INTERROGATORY NO. 6:** Please describe how the following statement made by Plaintiff in her conversation with Angie Schuman on December 16, 2018 was defamatory or highly offensive to the Plaintiff: "They don't know the meaning of trust. And they certainly can't be trusted."

**Objection:** This Interrogatory does not make sense.

**Response:** None

**Supplemental Response:** Ms. Uebelacker's statement "They don't know the meaning of trust. And they certainly can't be trusted." was not defamatory or highly offensive to Ms. Uebelacker.

  **INTERROGATORY NO. 7:** Please describe how the following statement made by Plaintiff in her conversation with Angie Schuman on December 16, 2018 was defamatory or highly offensive to the Plaintiff: "There are so many slimy people at work."

**Objection:** This Interrogatory does not make sense.

**Response:** None

**Supplemental Response:** Ms. Uebelacker's statement "There are so many slimy people at work" was not defamatory or highly offensive to Ms. Uebelacker.

  **INTERROGATORY NO. 8:** Please name and describe each alleged defamatory or highly offensive statement made by the Defendants about the Plaintiff including:

  a) The identity of the individual who made the alleged statement;

  b) The identify of the individual to whom the alleged statement was communicated to;

  c) The date(s) the alleged statement was made;

d) The identity of all persons known to you who have knowledge of the alleged statement and the knowledge that you believe each such person has; and

e) Any other factual basis for the allegation.

**Supplemental Objection:** Relevance

**Response**: The Defendants made several defamatory and highly offensive allegations of misconduct against the Plaintiff in their files, email communications and communications to the Wisconsin Equal Rights Division. The Defendant Shane Larson and employee Sharon Janes made the statements. Upon information and belief, the statements were published to other Rock Energy Cooperative employees, to the Rock Energy Cooperative Board of Directors and placed in the Plaintiff's employee file.

**INTERROGATORY NO. 9:** Do you contend that the employer took any adverse employment action against you in the violation of public policy? If so, please state:

a) The constitutional provision, statute, regulation, or other sources of the public policy that you contend was violated;

b) All facts upon which you base your contention that the employer violated public policy;

c) All persons known to you who have knowledge of your contention that the employer violated public policy; and

d) Any other factual basis for this contention.

**Response**: Per the First Amended Complaint, the Plaintiff does not allege a violation of public policy.

**INTERROGATORY NO. 10:** Do you contend that there were any internal written policies of the Defendants that apply to the making of a complaint of the type that is the subject matter of this lawsuit? If so:

a) State the title and date of each document containing the policies and a general description of the document's contents;

b) State the manner in which the document was communicated to the employees;

c) State the manner, if any, in which employee acknowledged receipt of the document or knowledge of its contents, or both;

d) State, if you contend that the employer failed to use any available internal complaint procedures, all facts that support that contention; and

e) State, if you contend that the employee's failure to use internal complaint procedures was excused, all facts why the employee's use of the procedures was excused.

**Response**: Upon information and belief, the Defendants did not have or rely on any Rock Energy Cooperative internal written policy when demoting and disciplining the Plaintiff and terminating her employment.

**INTERROGATORY NO. 11:** Have you purchased any benefits to replace any benefits to which you would have been entitled if the termination or alleged adverse employment action had not occurred? If so, state the cost for each benefit purchased or the dates.

**Response:**   No.

**INTERROGATORY NO. 12:** Have you applied for any retirement benefits through the Social Security Administration since the termination or alleged adverse employment action? If so, please state:

   a) The date to which you applied;
   b) Whether you receive any benefits; and
   c) The benefit amounts to date.

**Objection**:   Relevance.

**Response**:   No.

**INTERROGATORY NO. 13:** Do you attribute any loss of income, benefits, or earning capacity as a result of the termination or alleged adverse employment action? If so, please state the total amount of income, benefits, or earning capacity you have lost to date and how the amount was calculated.

**Response:**   Yes. Please see Appendix A for an analysis of the Plaintiff's lost compensation relating to the Defendants' actions.

**INTERROGATORY NO. 14:** Have you attempted to minimize the amount of your lost income? If so, describe how. If not, explain why not.

**Response:**   The Plaintiff is collecting income from her retirement benefits.

**INTERROGATORY NO. 15:** Have you obtained other employment since the termination or alleged adverse employment action? If so, for each new employment:

   a) State when the new employment commenced;
   b) State the hourly rate or monthly salary for the new employment; and
   c) State the benefits available from the new employment.

**Response**:   No.

**INTERROGATORY NO. 16:** Please describe the factual basis of the allegations of paragraph 26 of the First Amended Complaint that Plaintiff has suffered and will continue to suffer "emotional distress, psychological injuries, and other pecuniary and non-pecuniary losses."

**Response:**   The Plaintiff has suffered stress and humiliation caused by the Defendants' illegal actions regarding her private social media posts, discipline, demotion and the termination of her employment.

**INTERROGATORY NO. 17:** Please describe how you attribute any physical, mental, psychological, or emotional injuries to the termination or any other alleged adverse employment action?

**Response:**   The injuries did not exist before the Defendants' illegal actions occurred.

**INTERROGATORY NO. 18:** Please identify each physical, mental, psychological, oremotional injury that you attribute to the termination or the alleged adverse employment action and the area of your body affected, including:

   a) When the injury started; and
   b) The frequency, severity, and duration of the injury; and
   c) Whether you still have any complaints of the injury.

**Response**:   Please see the responses to Interrogatories 16 and 17.

**INTERROGATORY NO. 19:** Have you or anyone acting on your behalf obtained a written or recorded statement from any individual concerning the termination or the alleged adverse employment action? If so, for each statement state:

   a) The name, address, and telephone number of the individual from whom the statement was obtained;
   b) The name, address, and telephone number of the individual who obtained the statement;
   c) The date the statement was obtained; and
   d) The name, address, and telephone number of each person who has the originalstatement or a copy.

**Objection**:   The requested information is protected by the attorney-client privilege and the work product doctrine.

**Response**:   No responsive documents exist.

**Second Supplemental Response**:   Audiotapes recorded by the Plaintiff on January 15, 2019, and June 26, 2020, are provided. The recorded conversation on January 15, 2019, was between the Plaintiff and Defendant Shane Larson. The recorded conversation on June 26, 2020, was between the Plaintiff and Sharon Janes. No person other than the Plaintiff and Plaintiff's counsel has a copy of the recording or the original recording.

**INTERROGATORY NO. 20:** Are there any other damages that you attribute to the termination or the alleged adverse employment action? If so, for each item of damage state:

   a) The nature;
   b) The date it occurred;
   c) The amount; and
   d) The name, address, and telephone number of each person who has knowledge of the nature or amount of the damage.

**Response**:   The Plaintiff has requested recovery of all damages to which she may be entitled by law. Please

see the First Amended Complaint.

**INTERROGATORY NO. 21:** Do you have any documents to support the existence or amount of any item of damages claimed in Interrogatory No. 20? If so, identify the documents and state the name, address, and telephone number of the person who has each document.

**Response:** No.

**Supplemental Response:** Ms. Uebelacker's payroll data maintained by Defendant Rock Energy Cooperative support her damages claims.

**INTERROGATORY NO. 22:** For every request to admit that is denied, please provide the factual basis for each denial.

**Objection:** Not required under F.R.C.P. 36. Please see *Wanke v. Lynn's Transp. Co.*, 836 F. Supp. 587 (N.D.Ind. 1993).

**Response:** Please see the First Amended Complaint and Interrogatory Responses.

I attest that the Interrogatory Responses provided above are accurate to the best of my knowledge.

See prior signature                                             Date _____
Barbara J. Uebelacker

### REQUESTS FOR ADMISSION

**REQUEST TO ADMIT NO. 1:** Admit there is no evidence that the Defendants accessed the Plaintiff's Facebook account or Facebook Messenger account or application.

**Response:** Denied.

**REQUEST TO ADMIT NO. 2:** Admit there is no evidence that the Defendants surveilled the Plaintiff's Facebook account or Facebook Messenger account or application.

**Response:** Denied.

**REQUEST TO ADMIT NO. 3:** Admit there is no evidence that the Defendants hacked into Plaintiff's Facebook account or Facebook Messenger account or application.

**Response:** Denied.

**REQUEST TO ADMIT NO. 4:** Admit there is no evidence that the Defendants asked for or demanded the Plaintiff's Facebook password.

**Response:** Admit that there is no direct evidence that the Defendants verbally asked for or demanded the Plaintiff's Facebook password. Denied as to the remaining aspects of Request No. 4.

**REQUEST TO ADMIT NO. 5:** Admit there is no evidence that the Defendant accessed Angie

Schuman's Facebook account or Facebook Messenger account or application after December 17, 2018.

**Response:** Denied.

**REQUEST TO ADMIT NO. 6:** Admit there is no evidence that the Defendants published the Plaintiff's Facebook Messenger conversation.

**Response:** Denied.

**REQUEST TO ADMIT NO. 7:** Admit there is no evidence that the Defendants published a defamatory or highly offensive statement about the Plaintiff.

**Response:** Denied.

**REQUEST TO ADMIT NO. 8:** Admit there is no evidence that the Defendants discriminated against the Plaintiff on the basis of age.

**Response:** Denied.

**REQUEST TO ADMIT NO. 9:** Admit there is no evidence that an employee of the Defendants made a discriminatory statement about the Plaintiff on the basis of age.

**Response:** Denied.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST TO PRODUCE NO. 1:** Copies of any and all documents which were used to prepare answers to the foregoing interrogatories and requests for admission or which were referred to in the course of answering those interrogatories and requests for admission.

**Response:** Responsive documents are provided in Appendix A.

**REQUEST TO PRODUCE NO. 2:** Copies of any and all documents reflecting, referring to, or evidencing the alleged accessing of, surveilling of, and hacking into Plaintiff's Facebook account or Facebook Messenger account or application.

**Response:** Responsive documents are provided in Appendix A.

**REQUEST TO PRODUCE NO. 3:** Copies of any and all documents reflecting, referring to, or evidencing the history of logged in sessions of Plaintiff's Facebook account from December 1, 2018 through June 30, 2020.

**Objection**: Overbroad, vague, requests information not relevant to this matter.

**Supplemental Objection:** Not likely to lead to the production of admissible evidence.

**Response**: Plaintiff does not possess any responsive documents.

**REQUEST TO PRODUCE NO. 4:** Copies of any and all documents reflecting, referring to, or evidencing the history of authorized logins and devices of Plaintiff's Facebook account from December 1, 2018 through June 30, 2020.

**Objection**: Overbroad, vague, requests information not relevant to this matter.

**Supplemental Objection:** Not likely to lead to the production of admissible evidence.

**Response**: Plaintiff does not possess any responsive documents.

**REQUEST TO PRODUCE NO. 5:** Copies of any and all documents reflecting, referring to, or evidencing the alleged publication of Plaintiff's Facebook Messenger conversation.

**Response:** Responsive documents are produced in Appendix A.

**REQUEST TO PRODUCE NO. 6:** Copies of any and all documents reflecting, referring to, or evidencing the defamatory or highly offensive statement about the Plaintiff that was made public.

**Response:** Responsive documents are produced in Appendix A.

**REQUEST TO PRODUCE NO. 7:** Copies of any and all documents reflecting, referring to, or evidencing the Plaintiff's claim for age discrimination.

**Response:** Plaintiff does not possess any responsive documents.

**REQUEST TO PRODUCE NO. 8:** Copies of any and all documents reflecting, referring to, or evidencing the Plaintiff's claim for intentional infliction of emotional distress.

**Response:** Plaintiff does not possess any responsive documents.

**REQUEST TO PRODUCE NO. 9:** Copies of any and all documents reflecting, referring to, or evidencing internal written policies as described in Interrogatory No. 10.

**Response:** Responsive documents are produced in Appendix A.

**REQUEST TO PRODUCE NO. 10:** Copies of any and all documents reflecting, referring to or evidencing any benefits to replace any benefits to which you would have been entitled if the termination or alleged adverse employment action had not occurred as described in Interrogatory No. 11.

**Response:** A description of the Plaintiff's lost compensation is included in Appendix A.

**REQUEST TO PRODUCE NO. 11:** Copies of any and all documents reflecting, referring to, or evidencing any retirement benefits as described in Interrogatory No. 12.

**Response:** A description of the Plaintiff's lost compensation is included in Appendix A.

**REQUEST TO PRODUCE NO. 12:** Copies of any and all documents reflecting, referring to, or evidencing the loss of income, benefits, or earning capacity as described in Interrogatory No. 13.

**Response:** A description of the Plaintiff's lost compensation is included in Appendix A.

**REQUEST TO PRODUCE NO. 13:** Copies of any and all documents reflecting, referring to, or evidencing minimizing your lost income as described in Interrogatory No. 14.

**Response:**     The Plaintiff is receiving standard benefit payments in retirement as of June 30, 2020.

**REQUEST TO PRODUCE NO. 14:** Copies of any and all documents reflecting, referring to, or evidencing other employment obtained since the termination or alleged adverse employment action, including documentation of paystubs and other benefits available through the new employer as described in Interrogatory No. 15.

**Response:**     None.

**REQUEST TO PRODUCE NO. 15:** Copies of any and all documents reflecting, referring to, or evidencing the physical, mental, psychological or emotional injuries as described in Interrogatory No. 18.

**Response:**     Responsive documents will be produced under seal.

**REQUEST TO PRODUCE NO. 16:** Copies of any and all documents reflecting, referring to, or evidencing any written or recorded statements as described in Interrogatory No. 19.

**Objection:**     Certain responsive documents are withheld as protected from disclosure by the attorney-client privilege or attorney work product doctrine.

**Response:**     None.

**Second Supplemental Response**:     Audiotapes recorded by the Plaintiff on January 15, 2019, and June 26, 2020, are provided.

**REQUEST TO PRODUCE NO. 17:** Copies of any and all documents reflecting, referring to, or evidencing the Plaintiff's notes, diary, or journal as it relates to the subject matter of this lawsuit.

**Objection**:     Certain responsive documents are withheld as protected from disclosure by the attorney-client privilege or attorney work product doctrine.

**Response:**     None.

**REQUEST TO PRODUCE NO. 18:** Copies of any and all documents reflecting, referring to, or evidencing the Plaintiff's social media posts, comments, or content as it relates to the subject matter of this lawsuit.

**Objection**:   Overbroad, requests information not relevant to this matter.

**Response**:   None.

Dated this 2nd day of December, 2021.

                                                  LEWIS LAW OFFICE, LLC
                                                Attorney for the Plaintiff

                                                *Julie Lewis*
                                                _____
                                                Julie A. Lewis
                                                State Bar No. 1048367

P.O. Address
10 East Doty Street, Suite 800
Madison, WI 53703

Direct Contact
Julie A. Lewis            (608) 298-7324/office
                              jlewis@jlewislawoffice.com

I hereby certify that on December 2, 2021, I served an exact copy
of this document on all parties and/or counsel of record for the
parties by electronic mail, pursuant to Fed.R.Civ.P. 30(b).

LEWIS LAW OFFICE, LLC

        *Julie Lewis*
By:    _____
        Julie A. Lewis
To:    Attorney Rhea A. Myers